Argued and submitted June 3, affirmed September 22, 2021

In the Matter of Eric Schneider
Water Well Constructor License 1988.

Eric SCHNEIDER,
*Petitioner,*

*v.*

WATER RESOURCES DEPARTMENT,
*Respondent.*

Oregon Water Resources Department
2019OWRD00023; A173927

499 P3d 869

Petitioner, who holds a well constructor's license with a "water supply well" endorsement, seeks judicial review of an order of the Oregon Water Resources Department (OWRD) rejecting his application for a "monitoring well" endorsement. He contends that the OWRD lacked authority under ORS 537.747 to establish standards for a monitoring-well endorsement in excess of one year of well-drilling experience, and erred in its interpretation of the requirement in OAR 690-240-0065 that an applicant have experience operating well-drilling equipment on 15 monitoring wells or equivalent experience. He further contends that the OWRD's order is not supported by substantial evidence. *Held*: The OWRD did not err in concluding that it is authorized by ORS 537.747 to establish separate qualifications for a monitoring-well endorsement and did not err in its interpretation of OAR 690-240-0065. Substantial evidence supported the OWRD's determination that petitioner did not have experience operating well-drilling equipment on 15 monitoring wells or equivalent experience.

Affirmed.

Joseph W. Carlisle argued the cause for petitioner. Also on the briefs were William Gaar, Jillian Pollock, and Buckley Law P.C.

Peenesh Shah, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Aoyagi, Judge.

ARMSTRONG, P. J.

Affirmed.

## ARMSTRONG, P. J.

Petitioner Eric Schneider holds a well constructor's license with a "water supply well" endorsement. The question presented in this petition for judicial review is whether the Oregon Water Resources Department (OWRD) erroneously construed an administrative rule of the Water Resources Commission in rejecting petitioner's application for a "monitoring well" endorsement. We conclude that OWRD did not err, and we therefore affirm the agency's order denying the monitoring-well endorsement to petitioner.

No person can engage in the business of well drilling in Oregon without a license issued by OWRD pursuant to ORS 537.747:

"(1)  No person shall advertise services to construct, alter, abandon or convert wells, offer to enter or enter into a contract with another person or public agency to construct, alter, abandon or convert a well for such other person, cause any well construction, alteration, abandonment or conversion to be performed under such a contract or operate well drilling machinery without possessing a water well constructor's license therefor in good standing issued by the Water Resources Department. *The department shall adopt a single water well constructor's license that may specify the type of well, type of well alteration or construction or type of well drilling machine operation for which the water well constructor is qualified.*

"* * * * *

"(3)  A person shall be qualified to receive a water well constructor's license if the person:

"(a)  Is at least 18 years of age.

"(b)  Has passed a written examination conducted by the department to determine fitness to operate as a water well constructor.

"(c)  Has paid a license fee and an examination fee according to the fee schedule set forth under subsection (6) of this section.

"(d)  Has one year or more experience in the operation of well drilling machinery."

(Emphasis added.) The Water Resources Commission[1] and OWRD have construed the italicized text of ORS 537.747(1) to require OWRD to issue a single well constructor's license with endorsements for "the type of well alteration or construction or type of well drilling machine operation for which the water well constructor is qualified." OWRD has determined that, because of their specialized function in monitoring the properties of groundwater, the construction of monitoring wells presents challenges and requirements that are distinct from the challenges and requirements presented by the construction of water-supply wells, and requires a specialized licensure endorsement.[2] The commission has

---

[1] The Water Resources Commission administers and enforces the state's laws pertaining to water resources, including the Groundwater Act of 1955, ORS 537.505 to 537.795 and ORS 537.992, of which well-constructor licensing requirements are a part. The commission is authorized to develop administrative rules in implementing those laws. ORS 537.780. OWRD is the administrative arm of the commission and, subject to the policy direction of the commission, it is charged with administering and enforcing the laws of the state concerning water resources. ORS 536.037(1)(c). Both the commission and the department have authority to adopt rules pertaining to the licensing of water-well constructors, ORS 536.027(1); ORS 537.747(5), (7); ORS 537.780, and the commission has done so in OAR chapter 690, division 240. *See* OAR 690-240-0005 ("The Water Resources Commission (Commission) has been authorized to develop standards for wells drilled for the purpose of monitoring ground water in order to protect the state's ground waters. The Commission has also been authorized to develop standards for other holes through which ground water may become contaminated. The rules set forth herein are adopted to provide that protection. Their purpose is to prevent and eliminate ground water contamination, waste, and loss of artesian pressure.").

[2] A "Water Well Constructor's License" is

"a license to construct, alter, deepen, abandon or convert wells issued in accordance with ORS 537.747(3). Endorsements are issued to the license and are specific to the type of well a constructor is qualified to construct, alter, deepen, abandon or convert."

OAR 690-200-0050(116).

A "Water Supply Well" is

"a well, other than a monitoring well, that is used to beneficially withdraw or beneficially inject ground or surface water. Water supply wells include, but are not limited to, community, dewatering, domestic, irrigation, industrial, municipal, and aquifer storage and recovery wells."

OAR 690-200-0050(111). "Water Supply Well Constructor's License" means "a Water Well Constructor's License with a water supply well endorsement issued in accordance with ORS 537.747(3)." OAR 690-200-0050(113).

A "monitoring well" is defined as "a well that is designed and constructed to determine the physical (including water level), chemical, biological, or radiological properties of groundwater." OAR 690-200-0050(66). A "Monitoring Well Constructor's License" is "a Water Well Constructor's License with a monitoring well endorsement issued in accordance with ORS 537.747(3)." OAR-200-0050(68).

adopted administrative rules defining water-supply and monitoring wells and their licensing requirements and endorsements. OAR 690-240-0065 describes the qualifications for a "monitoring well" endorsement:

"(1)   License. To qualify for a Monitoring Well Constructors License, a person shall:

"(a)   Be at least 18 years old;

"(b)   Pass a written examination;

"(c)   Have a minimum of one year experience, during the previous 36 month period, in monitoring well construction, alteration, or abandonment. *This experience shall include the operation of well drilling machinery for monitoring well construction, alteration, conversion, or abandonment on a minimum of fifteen monitoring wells or a demonstration of equivalent experience in the operation of well drilling machinery.*"[3]

In August 2016, OWRD granted petitioner a water-well constructor's license with a water-supply-well endorsement. In October 2016, petitioner applied for a monitoring-well endorsement. On October 18, 2016, OWRD notified petitioner that it did not appear from his application that he had the necessary experience to qualify for a monitoring-well endorsement. OWRD offered petitioner a "trainee card" to allow him to continue to work on monitoring wells under a licensed driller while obtaining additional experience.

Petitioner's monitoring-well endorsement application remained pending with OWRD until 2018, when petitioner's employer, who also happens to be his father, asked OWRD to process it. OWRD denied petitioner's application after determining that he did not meet the qualification described in OAR 690-240-0065 for experience in the operation of well-drilling machinery for a minimum of 15 monitoring wells or "equivalent experience."

---

[3] The licensing endorsement for water-supply wells requires identical experience except that it requires that the one year of experience be in the operation of equipment in water-supply well drilling or equivalent experience. OAR 690-206-0020(1) ("This experience shall include the operation of well drilling machinery for water supply well construction, alteration, conversion, or abandonment on a minimum of fifteen water supply wells or a demonstration of equivalent experience in the operation of well drilling machinery.").

Petitioner challenged OWRD's administrative determination. Petitioner did not dispute that he has not worked on well-drilling equipment for 15 monitoring wells. But he contended that the rule's requirement of experience operating well-drilling equipment for 15 monitoring wells exceeds the statute's requirements. He further contended that OWRD's construction of the term "equivalent experience" exceeded the statute's authorization. Finally, petitioner contended that his experience operating well-drilling equipment on 75 water-supply wells was "equivalent."

After a contested case hearing, OWRD issued its final order upholding the denial. OWRD rejected petitioner's contentions that the rule's requirements for the monitoring-well endorsement exceeded the statutory requirements or that OWRD's construction of OAR 690-240-0065 was inconsistent with the rule's text or with ORS 537.747. OWRD summarized the rule's experience requirement for a monitoring-well endorsement:

> "The rule * * * requires a minimum of one year of experience during the relevant 36[-]month period. Furthermore, that year of experience must include one of the following: either experience operating well drilling machinery on at least fifteen monitoring wells, or experience operating well drilling machinery that is equivalent to operating well drilling machinery on at least fifteen monitoring wells."

OWRD found, and it is undisputed, that petitioner did not have experience operating equipment on 15 monitoring wells, and that the only question was whether petitioner had shown that he had equivalent experience.[4] In view of the distinct requirements for monitoring wells,[5] OWRD found

---

[4] OWRD found:

"Applicant worked on two monitoring wells. Applicant has not demonstrated that he has experience working on at least fifteen monitoring wells. To satisfy the requirements of OAR 690-240-0065(1)(c), Applicant must therefore demonstrate that he has experience that is the equivalent of operating well drilling machinery for the construction, alteration, conversion, or abandonment of a minimum of fifteen monitoring wells."

[5] In its order, OWRD described the different functions of water-supply wells and monitoring wells:

"Water supply wells are designed to supply a significant volume of water, whereas monitoring wells are not. * * *

that petitioner's experience on water-supply wells was not equivalent.[6]

On judicial review, petitioner does not dispute OWRD's finding that he has not worked on 15 monitoring wells. But petitioner continues to take issue with the rule's requirement of experience operating well-drilling machinery on 15 monitoring wells. Petitioner understands ORS 537.747(3) to establish

"*** Monitoring wells are frequently used as site investigation tools, either at contaminated locations or at locations that may be at risk for contamination. They can be used to measure water quality improvement throughout a contaminated site cleanup, or to provide early warning regarding the spread of contaminants."

OWRD explained that, although there are similarities in the construction of monitoring wells and water-supply wells, there are distinctions that make the drilling of monitoring wells more complex. Monitoring wells must include:

"• a ground surface monument which prevents damage and stops water, contaminants, rodents, and insects from entering the well from the surface;

"• a lockable cap to prevent well damage, inaccuracies in testing results, contaminant release, and unauthorized access;

"• a well casing consisting of the outer tubing, pipe, or conduit installed in the borehole after drilling, which supports the sides of the well and prevents contamination from entering the well except through the well screen;

"• an annular space seal, which fills the space between the well casing and the borehole wall, stops water and contaminants from moving vertically down the well, and prevents the well from becoming a conduit for further contamination;

"• a filter pack consisting of clean, chemically inert material in the annular space to keep particulates out of the well and to allow a representative sample of the water to pass;

"• a filter pack seal placed above the filter pack, which prevents grout material from infiltrating the filter pack;

"• a well screen which separates the filter pack from the interior of the well and allows representative samples of groundwater from discrete aquifers to enter the interior of the well for measurement, and which must not be readily reactive with the subsurface environment or contaminants being tested; and

"• a bottom cap which seals the interior of the well at the bottom to allow water to enter only through the well screen."

[6] OWRD explained that petitioner's experience in drilling water-supply wells was not equivalent to experience drilling monitoring wells:

"Monitoring well constructors must have specialized knowledge and experience in order to perform construction, conversion, alteration, or abandonment of a monitoring well. Selection of the correct materials, including the proper seal, filter pack, and grout that will not contaminate water samples or interact with existing contaminants in an aquifer, is necessary to perform work involving monitoring wells without creating the risk of additional contamination."

the minimum requirements for constructor licensure for all types of well drilling. In particular, petitioner contends, any experience requirement for a particular type of well-drilling endorsement cannot exceed the experience required by ORS 537.747(3)(d)—*viz.*, one year in the operation of well-drilling machinery. Thus, petitioner contends, the administrative rule's experience requirement of drilling 15 monitoring wells or equivalent experience, OAR 690-240-0065(1)(c) ("the operation of well drilling machinery for monitoring well construction, alteration, conversion, or abandonment on a minimum of fifteen monitoring wells or a demonstration of equivalent experience") exceeds the statutory minimum.

We agree with OWRD that the text of ORS 537.747 implicitly authorizes the adoption of endorsements for different types of wells, as well as OWRD's establishment of qualifications for the different endorsements. The statute's statement that the license "may specify the type of well, type of well alteration or construction or type of well drilling machine operation for which the water well constructor is qualified" necessarily delegates to OWRD the authority for the development of specific endorsements as well as their qualifications. In light of that broad delegation of authority, we conclude that the administrative rule's "experience" requirement for a monitoring-well endorsement was within the statute's authorization.[7]

Petitioner's primary challenge on judicial review is to OWRD's construction of the rule's requirement of "equivalent experience." The record includes evidence that the same type of drilling equipment used to drill water-supply wells is used to drill monitoring wells. Petitioner contends that "equivalent experience" as used in OAR 690-240-0065(1)(c)

---

[7] The rule describes evidence that can be offered in proof of the experience requirement:

"(A) Monitoring well reports or rough well logs with applicant's name entered for each of the 15 wells. The name, address and telephone number of the person responsible for the construction of each monitoring well shall be included on each report or log;

"(B) Income tax returns showing source of drilling income for a period of time, or worker's compensation account information or the equivalent may be established to satisfy the one year of active construction requirement;

"(C) Any other evidence the Director may deem suitable[.]"

means, simply, experience using the same well-drilling equipment that constructors use in drilling monitoring wells, without regard for the type of well or the number of wells drilled. Petitioner contends that, in his years drilling water-supply wells, he has used drilling equipment commonly used to drill monitoring wells and has thereby met the experience requirement.

Petitioner further contends that OWRD's construction of the rule, which requires not only that the drilling equipment be the same but that the work experience be equivalent to drilling 15 monitoring wells, is inconsistent with the rule's text and with the statute. Additionally, petitioner contends, if OWRD's construction requires that the "equivalent experience" option can be satisfied only by experience equivalent to drilling 15 monitoring wells, then the "equivalent experience" option is superfluous, because it is the same as the option to show actual experience operating drilling equipment on 15 monitoring wells.

OWRD responds that the equivalent-experience requirement of OAR 690-240-0065(1)(c) requires more than merely operating the same equipment used to drill monitoring wells—it requires well-drilling experience that is relevant to the experience of operating drilling equipment for monitoring wells. OWRD asserts that its construction is plausible and consistent with the rule's text.

OWRD also rejects petitioner's contention that its construction of the rule renders the "equivalent experience" option superfluous. OWRD explains that the first option for an applicant seeking a monitoring license is to show that the applicant actually worked on 15 monitoring wells. The second option—the equivalent-experience option—allows the applicant to show experience that is not actual work on 15 monitoring wells but that is equivalent to that work in terms of the required expertise or knowledge.

The parties agree that OWRD's construction of OAR 690-240-0065 is entitled to deference if it is plausible and not inconsistent with any other source of law.[8] *Gafur v.*

_____

[8] As noted, OAR 690-240-0065 is a rule of the commission, not the department. The commission's rule, OAR 690-240-0005, states that "[t]he official act of the Director acting in the Commission's name and by the Commission's authority

*Legacy Good Samaritan Hospital and Medical Center*, 344 Or 525, 537, 185 P3d 446 (2008) (We defer to the agency's plausible interpretation, if that interpretation is not inconsistent with the wording of the rule, its context, or any other source of law.). We agree with OWRD that it's construction of OAR 690-240-0065 is not only plausible but is the only plausible one. As OWRD has explained, the first option for satisfying the "experience" qualification for a monitoring-well endorsement is to show that the applicant has experience in the "operation of well drilling machinery *** on a minimum of fifteen monitoring wells." The second option allows the applicant to demonstrate experience equivalent to the first option. Grammatically and logically, the "equivalent experience" option refers back to the option requiring experience operating drilling equipment on 15 monitoring wells. As we have concluded, the legislature's authorization of licensing for different types of wells allows for the development of experience requirements for particular types of well-drilling endorsements. Necessarily, "equivalent experience" means experience equivalent to the experience required for the particular type of well-drilling endorsement. We reject petitioner's contention that OWRD's construction requiring that the applicant demonstrate experience equivalent to well drilling on 15 monitoring wells is inconsistent with the rule's text.

Evidence in the record supports the conclusion that OWRD will consider evidence other than monitoring-well drilling in determining whether an applicant has equivalent experience,[9] and that experience equivalent to operating

---

shall be considered to be an official act of the Commission." Under OAR 690-240-0005(5), the commission delegates to the Director "full authority to act in the Commission's name where that delegation is reflected in these rules." In light of that delegation, we agree with the parties that the OWRD's plausible construction of the commission's rules would be entitled to deference over competing plausible interpretations. But, as explained below, because OWRD's construction is the only plausible construction, any deference to that construction is not determinative in this case.

[9] For example, OWRD's order describes the materials submitted by a different applicant that OWRD deemed to show "equivalent" experience:

"Mr. Kingrey submitted documentation of his work on two 'observation wells' in Oregon, along with well logs for six monitoring wells. He also provided several letters of recommendation to OWRD, including: a letter from a hydrogeologist at the Idaho Department of Water Resources (IDWR)

drilling equipment on monitoring wells can be gained in the drilling of water-supply wells under conditions that present challenges or that require methods or materials equivalent to those commonly presented by work on monitoring wells. We therefore reject petitioner's contention that the requirement for equivalent experience is superfluous because it is functionally the same as the experience in drilling 15 monitoring wells.

Assuming the correctness of petitioner's own construction of equivalent experience, petitioner disputes OWRD's finding that he did not have equivalent experience. Having rejected petitioner's view that "equivalent experience" is simply experience operating equipment used in monitoring-well drilling, we need not address that contention. We nonetheless conclude that OWRD's finding that petitioner has not met his burden to show equivalent experience is supported by substantial evidence.[10] There

---

attesting to the quality of Mr. Kingrey's work on monitoring well installation projects; correspondence from the Water Distribution Section manager for IDWR confirming that Mr. Kingrey drilled monitoring wells owned by IDWR; and correspondence from a regional well inspector for OWRD stating that Mr. Kingrey 'has all of the knowledge and equipment' necessary to construct monitoring wells."

OWRD explained why it deemed the material submitted by Kingrey in support of his application to demonstrate "equivalent" experience, in contrast with the more limited experience demonstrated by the materials submitted by petitioner:

"OWRD determined that, although Mr. Kingrey had experience on fewer than fifteen monitoring wells, his experience on six monitoring wells, in combination with his experience on observation wells and more than 700 water wells, and along with multiple recommendations from experts at state agencies, together constituted the equivalent of experience operating well drilling machinery in the construction, alteration, conversion, or abandonment on a minimum of fifteen monitoring wells. In contrast, Applicant offered only his experience on two monitoring wells and approximately 75 water supply wells, without the assertion of any additional relevant experience and without recommendations or endorsement of any kind aside from that of his current employer. On the basis of that limited information, Applicant has not demonstrated experience equivalent to what Mr. Kingrey provided in his application."

[10] OWRD found:

"Applicant provided information stating that he had experience with multiple drilling methods and that he had worked on approximately 33 wells, 'primarily large capacity water supply wells.' The only other information available to OWRD in considering Applicant's experience was the questionnaire completed by [petitioner's employer] regarding Applicant's prior application for a water supply well endorsement. That questionnaire stated, in relevant part, that Applicant had experience operating well drilling machinery

is evidence that, in light of the unique functions and risks associated with monitoring-well construction and the different techniques required to construct them, even extensive experience on water-supply wells does not necessarily provide "equivalent experience."[11] Petitioner offered evidence that his experience drilling 75 water-supply wells presented some of the same challenges as drilling monitoring wells. OWRD found, simply, that that experience was not enough to be considered "equivalent." We have reviewed the record, including the exhibits presented by petitioner describing the nature of his work using well-drilling equipment on 75 water-supply wells, and conclude that OWRD's finding that petitioner's evidence does not show that his work was "equivalent" is supported by substantial evidence and substantial reason.[12] We therefore affirm OWRD's order.

     Affirmed.

---

as a driller's helper on two monitoring wells and approximately 40 water supply wells, and that Applicant was experienced with 'grouting/sealing, welding/cutting, casing install,' 'pump installation,' and 'rig setup. Neither Applicant nor his employer submitted any supplemental information to show Applicant's experience relevant to monitoring wells."

[11] In his affidavit, Kristopher Byrd, manager of the OWRD Well Construction and Compliance Section, provided a description of the differences between monitoring wells and the highly technical and precise construction practices required for monitoring wells. In his opinion, operating drilling equipment on water-supply wells would not give equivalent experience:

"Simply being familiar with drilling machines, or even being a licensed water supply well constructor, does not automatically qualify an individual to construct monitoring wells. Because monitoring wells are often highly technical wells that are designed for specific purposes in unique settings, they must be constructed in a particular way in order to locate, test, remediate, and track, contaminant plumes that are affecting groundwater aquifers. Any well not constructed by a knowledgeable professional could jeopardize the integrity of the test results by providing false positive or false negative, outcomes."

[12] We are not persuaded and reject without further discussion petitioner's contention that OWRD's plausible construction of OAR 690-240-0065 is inconsistent with the agency's prior construction or that that construction has been applied on an *ad hoc* basis.